**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EARL GESCH III,

        Plaintiff,

v.                                                  Case No. 05-CV-73041-DT

EMCEA TRANSPORT,

        Defendant.

_____/

**ORDER DENYING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT" AND
STRIKING THE "SUPPLEMENTAL" BRIEFING FILED BY THE PARTIES**

Pending before the court is Defendant EMCEA Transport's ("EMCEA's") "Motion

For Summary Judgment."  The matter has been fully briefed and the court conducted a

hearing on March 29, 2006.  For the reasons stated below, the court will deny

Defendant's motion and will strike the supplemental briefing filed by the parties.

**I. BACKGROUND**

Plaintiff Earl Gesch III is employed by Roadway Express as a dock checker at its

facility on Van Born Road in Taylor, Michigan.  (Pl.'s Dep.19-20.)[1]  On March 15, 2004,

Plaintiff was operating a forklift and drove into an empty 53-foot trailer, set down the

cargo he was carrying, and backed out of the trailer.  (*Id.* at 80-81.)  Both the "tractor

and semi-trailer were motor vehicles owned by EMCEA."  (Compl. at ¶ 4.) Plaintiff

maintains that "[a]s a result of EMCEA's negligence, [P]laintiff backed the forklift out of

the trailer toward the dock and the forklift fell into the gap between the trailer and the

_____

[1]Plaintiff also held the position of safety man on the dock, driver, and switcher in
the yard during his approximately thirty-one years with the company.  (*Id.* at 23.)

dock.  The forklift, with [P]laintiff inside, slammed into the dock causing [P]laintiff's neck and shoulder area to slam into the seatback, causing serious injuries and impairment of body function."  (*Id.* at ¶ 7.)

Plaintiff alleges that EMCEA "owed [P]laintiff a duty to operate the tractor/trailer with ordinary care and to act in a reasonable and prudent manner so as to ensure the safety of other employees in the vicinity."  (*Id.* at ¶ 5.)  Plaintiff alleges that "EMCEA's driver breached this duty by, among other things, improperly parking the tractor/trailer, failing to set the brakes, leaving the engine in neutral, and failing to chock the wheels."  (*Id.* at ¶ 6.)  Plaintiff alleges that "EMCEA is liable for the negligence of its employee under the principle of respondeat superior, and under the Michigan owner's liability statute, [Mich. Comp. Laws Section] 247.401."  (*Id.*)  Plaintiff avers that his damages exceed $100,000.  (*Id.* at ¶ 9.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

2

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'"). The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

The issue before the court is whether Defendant EMCEA owed a duty to protect Plaintiff under the circumstances that existed at the time of the incident in question.

In Michigan, as with most jurisdictions, there are four elements to the tort of negligence: duty, breach, causation (including both cause in fact and proximate cause), and damages.  *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20, n.6 (Mich. 2000). Whether a duty of a care is owed to a plaintiff is a question of law.  *Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995).  "Duty" is defined as any obligation the defendant has to the plaintiff to avoid negligent conduct.  *Id.*  (citing *Moning v. Alfono,* 254 N.W.2d 759 (Mich. 1977)).  Recognition of a duty implicates various considerations including the relationship between the parties, the nature and foreseeability of the risk to be avoided and the burdens and benefits of recognition.  *See Buczkowski v. McKay*, 490 N.W.2d 330, 333 (1992).  Whether a duty is owed depends on whether harm is reasonably foreseeable.  *See Monig*, 254 N.W.2d at 759; *Johnson v. City of Detroit,* 579 N.W.2d 895, 902 (Mich. 1998) ("Where the events leading to injury are not foreseeable, there is no duty, and summary disposition is appropriate.").

There also exists an important distinction between the elements of duty and breach.  Duty asks whether there is a legal obligation to avoid negligent conduct, while breach focuses on whether a party acted within the bounds of the appropriate standard of care.  *See Buczkowksi*, 490 N.W.2d at 332-33.  "[T]he duty to use 'reasonable care' is the standard for liability rather than the antecedent conclusion that a particular plaintiff has protection against a particular defendant's conduct."  *Id.* at 332.

4

## A.  Whether Hewitt Owed A Duty to Plaintiff

Defendant contends that "Rick Hewitt [Defendant's driver] owed no duty to Gesch under the circumstances, but that even if he did owe a duty, Hewitt could not have foreseen that Gesch would fail to protect himself as required by Michigan statute, thereby precluding establishment of proximate causation."  (Def.'s Mot. at 1.)  On the other hand, Plaintiff argues that Hewitt owed him a duty to chock his vehicle.

In support of his argument that Defendant owed Plaintiff a duty, Plaintiff presents the deposition testimony of Mr. Thomas Siefert, who managed the Roadway terminal on the day of the accident.  Mr. Siefert testified that:

Q:  Now with regard to the policy [of chocking trailers], we have this . . . exam from 07/13/93 - -
A: Mm-hmm.

Q: And question number seven says, "Before entering a trailer for the first time, the forklift operator should, among other things, check to see - - or make sure the trailer wheels are chocked."  Now, you've stated that that was not a policy enforced in 2004, is that correct?
A: We did not discipline for it.

Q: And it was not subject - - a subject of safety meetings, is that also correct?
A: It certainly was not-no we did not have meetings -most of the meetings were with drivers on chocking trailers.  In the - - in the Roadway environment, the driver was responsible to make sure the unit was chocked.

                                    ***

Q: Because it wasn't your personal policy or what?
A: Because it - - it was our policy to make - - to train our drivers to chock trailers.

5

Q: You mean your truck drivers?
A: Truck drivers, correct.

Q: Not the hi-low drivers?
A: Right.

(Siefert Dep. at 65-67.)

Plaintiff also maintains that Hewitt should have set the brakes and chocked the

wheels pursuant to the Michigan Commercial Driver License Manual, which states:

Never leave your vehicle unattended without applying the parking brakes
or chocking the wheels.  Your vehicle might roll away and cause injury and
damage.

(Pl.'s Resp. at Ex. 7.)  Plaintiff also describes the interaction between the

Michigan Occupational Safety and Health Act ("OSHA"), the federal OSHA, and

the federal Department of Transportation ("DOT") parking brake regulations.

Plaintiff's primary argument is that "the [federal] OSHA is preempted from

trucking operations if a working condition is regulated by another Federal agency.  The

Department of Labor concedes that the DOT's parking brake regulations preempt

OSHA's forklift operations regulations concerning the securing of a tractor-trailer."  (*Id.*

at 7.)  Plaintiff maintains that "[b]ecause Michigan's OSHA regulations exist only insofar

as they are authorized by federal OSHA, and only insofar as they do not conflict with

federal motor carrier regulations, the forklift operations rules cited by EMCEA are

preempted by the DOT's truck parking brake regulation."  (*Id.*)  Plaintiff, however, has

neither offered any cases standing for the proposition he argues, nor discussed the

legal relationship that existed between Hewitt and Plaintiff that would create a duty on

6

the part of Hewitt to protect Plaintiff.  In other words, Plaintiff has not cited authority

suggesting that the regulations he relies upon imposed a duty upon Hewitt to safeguard

Plaintiff, but has only discussed how, in his view, certain statutes and regulations would

apply in relation to one another based on various theories of pre-emption.

Irrespective of these failings in presentation, the court notes that there exists an

undeniable, fundamental duty to operate a motor vehicle with reasonable safety.  It is

nothing more elaborate than common sense to observe that the "operation" of a vehicle

includes causing it to move and causing it to stop.  Michigan has recognized for almost

eighty years that, once the vehicle is brought to a stop, there exists a duty for the driver

to safely and adequately secure his vehicle while it remains parked.  The Michigan

Supreme Court, in *Bacon v. Snashall*, 213 N.W. 705 (Mich. 1927) held that:

> If the emergency brake [of the vehicle] was not properly set, there was a
> possibility, as appellant seems to recognize and cited cases show, that the jar of
> a heavy vehicle passing by or a bump by another auto might loosen the
> mechanism and permit the parked auto to slowly start down the grade on which it
> was left. . . .  Clearly it was the duty of defendant to so leave his parked car on
> the top of this hill that such incidents would not affect it.

*Id*. at 707.  Besides being long-established law, this explanation by the Michigan

Supreme Court makes perfect sense on an intuitive level.  Safe vehicle operation

includes safely securing the vehicle as the surrounding circumstances may require.

Hewitt owed a general duty to Plaintiff and others to properly secure his vehicle

while leaving it unattended.

7

### B.  Whether That Duty Was Breached

While Defendant contends that Plaintiff had a duty to assess whether the vehicle

was secure, Defendant maintains that Hewitt  set his brakes.  Defendant has presented

Hewitt's testimony that he did indeed set the brakes:

> Q:  So, tell me what you did from the moment you cleared security and drove up
> towards the dock.
>
> A:  I drove off towards the dock, and when I got approaching the dock I
> positioned my trailer so it would be aligned with the loading dock, parked my
> brakes, got out, opened my doors, got back in my tractor, backed up to the
> loading dock, *set my brakes,* and then went to the dispatch office.
>
> Q: Okay.  Do you know which dock you parked at?
>
> A:  I don't remember.
>
> Q:  What happened next?
>
> A: I was in the dispatch office getting bills from one of the girls, and one of
> Roadway's employees came down and said that my truck had rolled away from
> the dock.  At that time, I proceeded with him back out toward the truck.

(Hewitt Dep. at 9) (emphasis added). Hewitt also testified that at no time during his

career at EMCEA has he ever failed to set his brakes in similar circumstances.

> Q: At any time during your career driving tractor-trailer, have you ever failed to
> set the brakes?
>
> A: No, I have not.

(*Id.* at 7.)

Arguing that Hewitt did not set his brakes, Plaintiff presents Mr. Allen Sacco's[2]

deposition testimony, in which he stated that he heard Hewitt set his brakes after the

---

[2]Mr. Sacco is a maintenance employee of Roadway Express.  (Sacco Dep. at 5.)

8

2:05-cv-73041-RHC-SDP   Doc # 31   Filed 05/12/06   Pg 9 of 13   Pg ID 500

incident:[3]

> Q: Okay.  And you heard the telltale sound of the brakes being set when he backed into the dock?
>
> A: Yeah, I heard–I heard him set the brakes when he backed it in, yeah.
>
> Q: After the incident?
>
> A: Yes.

(Sacco Dep. at 29.)  Plaintiff also points to the following testimony provided by

Hewitt:

> Q: So, tell me what you did from the moment you cleared security [at Roadway] and drove up towards the dock.
>
> A: I drove off towards the dock, and when I got approaching the dock I positioned my trailer so it would be aligned with the loading dock, parked my brakes, got out, opened my doors, got back in my tractor, backed up to the loading dock, set my brakes and then went to the dispatch office.
>
> ***
>
> Q: So you've given me an accurate and complete description of everything you did at Roadway up to this point?
>
> A: Yes, I have.

(Hewitt Dep. at 9, 11.)  Plaintiff argues form this testimony that Hewitt did not mention

chocking or inspecting for chocks.  (Pl.'s Resp. at 2.)

Plaintiff has also introduced a letter that, sent to EMCEA.  In the letter, Siefert

wrote that "[u]pon backing into the dock to be loaded, Mr. Hewitt failed to chock his

wheels and did not set his unit's parking brakes."  (*See* Pl.'s Resp. at Ex. 4.)  In his

---

[3]Mr. Sacco's testimony does not necessarily bear on the issue of whether Hewitt set his brakes *prior* to the incident.

9

testimony relating to the letter, Mr. Siefert stated:

> Q: Let's take a look at . . . the letter of April 28, 2004. . . . [Y]ou have a
> sentence here, quote, "Upon backing into the dock to be loaded, Mr.
> Hewitt failed to chock his wheels and did not set his unit's parking brakes."
> . . . Why did you write that sentence?
>
> A: Because the unit rolled away from the dock.  If - - he had set the brakes
> to the tractor, it should not have rolled.  He certainly did not chock the
> trailer, or it would not have rolled.  It was my feeling at the time that he did
> not set the brakes.

(Siefert Dep. at 14.)

Based on the evidence presented, there is a genuine issue of fact as to whether

Hewitt *chocked* his wheels, but no genuine issue as to whether the brakes were set.

The only evidence that Hewitt did not set his brakes seems to be Siefert's testimony that

"[i]f - - he had set the brakes to the tractor, *it should not have rolled*."  (*Id.* at 14)

(emphasis added.)  This statement, although not objected to at the deposition,

constitutes an opinion on the question of whether the brakes were set, and would

ordinarily be inadmissible.  Evidence that is inadmissible cannot be offered to identify a

genuine issue of fact.  *Lucas v. Chance*, 121 Fed. Appx. 77, 2005 WL 95740, at *2 (6th

Cir. 2005).  Also, an expression to the effect that an observed event was unexpected or

out of the ordinary is usually incapable of supplying a genuine issue of fact as to the

causation of the event.  *See Hunter v. Caliber System, Inc.*, 220 F.3d 702, 709 (6th Cir.

2000); *see also Klepper v. First American Bank*, 916 F.2d 337, 343 (6th Cir. 1990).

Defendant argues that, regardless of whether Hewitt chocked his wheels, Plaintiff

should have confirmed that the vehicle's wheels were chocked before driving his vehicle

into the trailer.  Defendant asserts that at the time of the incident at issue, Part 21 of the

10

Michigan Occupational Safety and Health Act regulations regarding "Powered Industrial

Trucks" was in effect.  This regulation states that:

> The purpose of this part is to provide, in or about places of employment,
> minimum safety rules for the care and use of powered industrial trucks
> and to provide for operator safety and specifications of equipment.

(*See* Def.'s Mot. at Ex. D.)  Rule 408.12183 of the regulation states in relevant part:

> (1) An operator shall operate a powered industrial truck according to the
> rules of this part and in accordance with local traffic rules when on a public
> road.

(*Id.*)  In addition, Rule 408.12176 provides that:

> (1) An employer shall ensure that a highway truck and trailer shall not be
> boarded by a powered industrial truck before the highway truck and trailer has its
> brakes set and not less than 2 wheels blocked or be restrained by other
> mechanical means installed in a manner that will hold the trailer from movement.

(*Id.*)  Defendant argues that Plaintiff "had an obligation to comply with the MIOSHA

regulations, and his employer, Roadway Express, had an obligation to ensure that he

did so."  (*Id.* at 7.)  Defendant also points out that "[o]ver the course of his years of

employment with Roadway, [P]laintiff was periodically given a Forklift Certification

Exam" and "[o]ne of the questions which appeared on this examination was discussed

by [Plaintiff] at this deposition."  (*Id.* at 2.)  Defendant has attached the following

deposition testimony provided by Plaintiff on this point:

> Q:  Mr. Gesch, I'm going to hand you what's been marked as Exhibit
> Number 6, which is Forklift Certification Exam dated July 13, 1993, and
> draw your attention to question number 7 on this written exam.

* * *

11

Q:  Have you reviewed question number 7, Mr. Gesch?

A:  Yes.

Q:  Can you state for the record what the question is and what the answers are for number 7?

A:  The question is, before entering a trailer for the first time, a forklift operator should–

Q:  And what are the four answers?

A:  Check the trailer floor for holes and weak spots, make sure the trailer wheels are chocked, check to see- - check to see if the dock plate is secured.

Q:  And what is D?

A:  All of the above.

Q:  You circled D, all of the above?

A:  Yes.

(Pl.'s Dep. at 51-52.)  Defendant points out that Plaintiff testified that he never "check[s] to see if the trailer is chocked before [he] begin[s] the loading procedure."  (*Id.* at 44.)

Even if Plaintiff, operating with due care, should have confirmed that the trailer wheels were chocked before driving his vehicle into, it whether a defendant has breached a duty of due care is an issue of fact.  *Murdock v. Higgins*, 559 N.W.2d 639, 642-43 (1997) ("Only after finding that a duty exists may the factfinder determine whether, in light of the particular facts of the case, there was a breach of the duty.").  If Plaintiff breached a duty of due care in addition to Hewitt, the jury will examine his negligence comparatively with Defendant's.  *Rodriguez v. Solar of Michigan, Inc.*, 478 N.W.2d 914, 918 (Mich. Ct. App. 1991).

12

Hewitt had a duty to properly secure his vehicle. Even though it appears that Hewitt did "set" his brakes, there remains conflicting evidence relating to whether Hewitt secured his vehicle in a way that would effectively prevent it from moving under the circumstances as they existed at that time, including whether the brakes were *properly* set. *Bacon,* 213 N.W. at 707.

The court will leave to the jury the question of whether Defendant breached its duty and deny Defendant's motion.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 14] is DENIED.

IT IS FURTHER ORDERED that the Supplemental Briefing [Dkt. ## 25, 26, 27, 29] is STRICKEN from the record.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  May 12, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 12, 2006, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522